UNITED STATES DISTRICT COUT
WESTERN DISTRICT OF NEW YORK
_____

CYNTHIA M.,[1]
                                    Plaintiff                    DECISION and ORDER

-vs-                                                             1:23-CV-00955-CJS

COMMISSIONER OF SOCIAL
SECURITY,
                                    Defendant.
_____

INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security ("Commissioner" or "Defendant")

which denied the application of Plaintiff for Social Security Disability Insurance ("SSDI")

benefits.   Plaintiff maintains that such determination is affected by errors of law and not

supported by substantial evidence, and, more specifically, that remand is required

because the Appeals Council erroneously failed to consider a medical opinion written

after the Administrative Law Judge's ("ALJ") decision that arguably pertained to the period

prior to the decision, and, alternatively, because the ALJ failed to discuss Plaintiff's non-

severe mental impairments when making his residual functional capacity ("RFC")

determination.   Now before the Court are the following motions: 1) Plaintiff's motion (ECF

No. 7) for judgment on the pleadings; 2) Defendant's cross-motion (ECF No. 9) for

_____

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective
immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in
the United States District Court for the Western District of New York, any non-government party will be
identified and referenced solely by first name and last initial."

judgment on the pleadings; and 3) Plaintiff's motion (ECF No. 14) to substitute a party for the now-deceased claimant.   For reasons discussed below, Plaintiff's unopposed motion to substitute party is granted, Plaintiff's application for judgment on the pleadings is denied, Defendant's motion for judgment on the pleadings is granted, and this action is dismissed.

STANDARDS OF LAW

The Commissioner decides applications for disability benefits using a five-step sequential evaluation process:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920.   First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment[2] which significantly limits his physical or mental ability to do basic work activities.[3] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment].   Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[4]

_____

[2] "At step two, the ALJ must determine whether the claimant has a 'severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 404.1509, or a combination of impairments that is severe and meets the duration requirement.' *Id.* If not, the claimant is deemed not disabled, and the inquiry ends." *Koch v. Colvin*, 570 F. App'x 99, 101 (2d Cir. 2014); *see also*, 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.").

[3] The Commissioner's Regulations define basic work-related activities as follows: "Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include— (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting."   20 C.F.R. § 404.1522 (West 2023).

[4] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*,

> Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.   The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.[5]

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted).

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim.   In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).   Further, Section 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see*

---

1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

[5] "The Commissioner's burden at step five is to show the existence of possible employment for an individual with the RFC determined by the ALJ in the fourth step of the sequential analysis." *Smith v. Berryhill*, 740 F. App'x 721, 726–27 (2d Cir. 2018) (citation omitted). The ALJ typically does this either by resorting to the medical vocational "grids" or, where the claimant has a non-exertional impairment, by taking testimony from a vocational expert [("VE")]. *See, Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986) ("[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines. A more appropriate approach is that when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.").

*also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge] [("]ALJ[)"]. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773.   Substantial evidence is defined as "more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted).

> The substantial evidence standard is a very deferential standard of review— even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered." *Id*.

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted); *see also, Snyder v. Comm'r of Soc. Sec.*, No. 22-277-CV, 2023 WL 1943108, at *1 (2d Cir. Feb. 13, 2023) ("While the substantial evidence standard requires we find more than a mere scintilla of support for the Commissioner's decision, it is still a very deferential standard of review requiring us to uphold the Commissioner's findings unless a reasonable factfinder would *have to conclude otherwise*.") (emphasis in original; citations and internal quotation marks omitted); *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022) ("We may vacate the agency's disability determination only if it is based on legal error or unsupported by 'substantial evidence'— that is, if no reasonable factfinder could have reached the same conclusion as the ALJ.").

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted). "In other

words, this Court must afford the Commissioner's determination considerable deference, and 'may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.'" *Melia v. Colvin*, No. 1:14-CV-00226 MAD, 2015 WL 4041742, at *2 (N.D.N.Y. July 1, 2015) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984)).

Also, when considering whether a particular finding or decision is supported by substantial evidence, a court may not rely on any *post hoc* rationalizations offered by the Commissioner, but it may consider evidence that was evidently considered by the ALJ even if it was not expressly mentioned in the administrative decision. *See, Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability. *E.g., Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.1982). In *Berry*, we noted that, although we would remand for further findings or a clearer explanation where we could not fathom the ALJ's rationale "in relation to evidence in the record," we would not remand where "we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Id. See also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir.1981) ("Notwithstanding the apparent inconsistency between the reports of [two doctors], we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony ....")."); *see also, Loni S. v. Comm'r of Soc. Sec.*, No. 3:22-CV-805 (CFH), 2023 WL 4195887, at *19 (N.D.N.Y.

June 27, 2023) ("The Court is required to look at the entire ALJ's decision when reviewing for substantial evidence. *See John L. M. v. Kijakazi*, No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2 (N.D.N.Y. Aug. 18, 2022) (citations omitted) ('[W]hile a reviewing court may not affirm the Commissioner's decision based on an impermissible *post-hoc* rationalization, it may affirm where the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole.').").

FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the factual and procedural history of this action, which is set forth in the parties' papers.    The Court will refer to the record only as necessary to rule on the alleged errors identified by Plaintiff.

Briefly, on September 30, 2020, Plaintiff filed an application for SSDI benefits, claiming to have become disabled on March 15, 2020, due to a combination of physical and mental impairments.   The claim was denied initially and on reconsideration, and on May 20, 2022, a telephonic hearing was held before an ALJ, at which Plaintiff, represented by her attorney, and a VE testified.   The medical record before the ALJ included mental-health treatment records from Horizon Health Services ("Horizon"), Exhibit 33F, Tr. 1333-1410, from whom Plaintiff received counseling services after she accidentally overdosed on opioids and spent time at in-patient rehab.   The Horizon records cover the period from August 27, 2021 through April 4, 2024. Tr. 1333.

On August 23, 2022, the ALJ issued a decision finding that Plaintiff was not disabled at any time between the alleged disability onset date and the date of his decision. Tr. 132-145.   In that regard, the ALJ found, in pertinent part, that Plaintiff had several

severe physical impairments, as well as mental impairments consisting of "major depressive disorder" and "unspecified anxiety disorder." Tr. 135.   The ALJ found that the mental impairments were not "severe," since they did not cause more than minimal limitation in Plaintiff's ability to perform the basic mental activities of work.

To support his finding that Plaintiff's mental impairments were non-severe, the ALJ discussed the record and found that the impairments caused Plaintiff to have no-more-than "mild" limitations in the four broad functional areas known as the "paragraph B" criteria. Tr. 135-137.   Specifically, the ALJ stated:

> In making this finding, I have considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.
>
> In the Function Report dated December 30, 2020, the claimant reported having anxiety (Exhibit 5E, 9). She reported stress and intrusive thoughts. She reported panic attacks most days. She did not like to travel alone. She was afraid of people in public. She reported being able to shop in stores (Exhibit 5E, 17). She was able to manage her finances. She reported interacting with others (Exhibit 5E, 18). She reported not needing someone to accompany her when she went out. She did not allege issues getting along with her family. She alleged no difficulties with memory, completing tasks, concentration, understanding, following instructions, or getting along with others (Exhibit 5E, 19). She could follow spoken and written instructions fairly well. She was able to get along with authority figures. She reported difficulties handling stress and changes in routine (Exhibit 5E, 23).
>
> At the claimant's annual physical in September of 2017, she was visibly tearful (Exhibit 1F, 10).   She was rated as having "severe" depression.
>
> She also treated for anxiety and depression. She was treated by her primary care provider with Cymbalta and Hydroxyzine (Exhibit 1F, 59 and 26F, 20).

The claimant attended a consultative examination with Christine Ransom, Ph.D., on March 19, 2021 (Exhibit 10F). She reported working as an administrative assistant for 14 years, but was laid off in March 2020 due to COVID. She did not report psychiatric hospitalizations or outpatient treatment (Exhibit 10F, 2). She was being treated by her primary care physician with medication for depression and anxiety for about two years. She reported the medication worked well. She only occasionally had a bad day. She was oriented to person place and time (Exhibit 10F, 3). Her attention and concentration were intact (Exhibit 10F, 4). She could count backward from 20 and do simple calculations and serial 7s without error. Her immediate memory was intact. She could remember 3 out of 3 objects immediately, 5 digits forward, and 3 digits backward. Recent memory intact. She could remember 3 out of 3 objects after five minutes.   Remote memory intact. She could remember adequate detail about her own past personal history.   Insight and judgment were good.

The claimant reported to Dr. Ransom that she can dress, bathe, and groom herself (Exhibit 10F, 4). She can do light cooking, cleaning, laundry, and shopping. She is able to manage money. She is able to drive a car, but only does so rarely because it is difficult to turn her neck, and she does have some numbness in her hands. She likes to spend time with her grandchildren and her children, watch TV, listen to the radio, read, and enjoy her garden. She was noted with stabilized major repressive disorder and unspecified anxiety disorder (Ehxibit10F, 5).

On August 27, 2021, she was referred [to Horizon] after mental health assessment from Clearview after accidental overdose of morphine (Exhibit 33F, 30). She was abusing oxycodone. She reported having a lot of anxiety. She reported feeling financially stressed. She had difficulty concentrating. Her mental status examining was generally normal. She reported feeling her house was haunted after seeing shadows ([Horizon Treatment Records,] Exhibit 33F, 19). However, there was no indication of consistent hallucinations.

On April 4, 2022, on her mental status examination [at Horizon] she was noted as euthymic, without anxiety or depression and all cognition fully normal. She had some increase in anxiety when she was out of medication.

9

She reported her anxiety was more manageable. Her symptoms and difficulties being around others due to her anxiety appeared to be better managed.

In the functional areas of understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself the claimant has mild limitations. The record as a whole did not demonstrate disruptions to memory, concentration, interaction, or adaptation based upon the objective testing available. While the claimant had subjective complaints there was a lack of treatment supported by evaluation and testing of the claimant's mental health limits.

A DDE opinion was provided by D. Brown, Psy.D. (Exhibit 2A). While Dr. Brown did not have the opportunity to directly examine the claimant, Dr. Brown had an opportunity to review the record as it appeared on the date the opinion was made. Specifically, Dr. Brown opined the claimant had no restrictions to interaction with others (Exhibit 2A, 8). She had mild limitations to understanding, remembering, applying information, concentrating, persisting, maintaining pace, adapting, or managing herself. In the more recent DDE assessment L. Haus, Psy.D., found similar limitations (Exhibit 3A, 11-12). This assessment was generally consistent with the record which did not demonstrate that the claimant's mental health conditions were severe. Overall, it was persuasive.

Dr. Ransom provided an assessment indicating the claimant did not have evidence of mental health limitations (Exhibit 10F, 4). This assessment was based upon the direct examination of the claimant and was persuasive that the claimant's mental health conditions were non-severe.

Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere (20 CFR 404.1520a(d)(1)).

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental

> impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

Tr. 136-137.

Later in the the decision, the ALJ found, in pertinent part, that Plaintiff had the following RFC:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can sit six hours. She can stand/walk two hours. She can lift/carry ten pounds occasionally and five pounds frequently. She can occasionally climb, stoop, kneel, crouch, and crawl. The claimant can occasionally reach overhead bilaterally and must avoid concentrated exposure to respiratory irritants.

Tr. 138.   As can be seen, and as relevant to Plaintiff's claims in this action, the RFC finding contains limitations related to Plaintiff's physical impairments, but not her mental impairments.   Additionally, the several pages of discussion immediately following the RFC finding focus on Plaintiff's physical impairments, and do not mention her mental impairments.   As discussed further below, that is evidently because, as the ALJ noted at the conclusion of his discussion at step two, his later "residual functional capacity assessment reflect[ed the degree of limitation [that he had] found in the 'paragraph B' mental function analysis.'" Tr. 137.   In any event, based on this RFC, finding, the ALJ further found that Plaintiff was capable of performing her past work as an administrative assistant, Tr. 144, which the VE classified as "skilled" and "sedentary" work, Tr. 195, and that Plaintiff was therefore not disabled.

Plaintiff appealed to the ALJ's unfavorable ruling to the Appeals Council.   In

support of the appeal, Plaintiff provided a new mental residual functional capacity report by mental health therapist Brianna Brooks, LMSW ("Brooks") from Horizon. Tr. 119-123. Significantly, the report by Brooks was dated November 9, 2022, more than two months after the ALJ's decision.   The report indicated, however, that Plaintiff began treatment with Horizon on September 21, 2021, almost a year before the ALJ's decision. Tr. 119. The report was not strongly supportive of Plaintiff's disability claim since, for example, it indicated that Plaintiff had either "unlimited or very good" or "limited but satisfactory" mental abilities to perform either skilled or unskilled work. Tr. 121-122.   Additionally, the report admitted that Plaintiff was capable of performing "full-time competitive employment on a sustained basis." Tr. 123.   At the same time, however, the report estimated that Plaintiff would be absent from work due to mental impairments "about two days per month." Tr. 123.   Finally, when Brooks was asked to state, on the form provided by Plaintiff's attorney, "What is the earliest date that the above description of limitations applies?," Brooks left the answer blank. Tr. 123.

The Appeals Council denied Plaintiff's appeal, and, as part of its decision, declined to consider the report from Brooks, stating, in pertinent part:

> Under our rules, we will review your case for any of the following reasons:
>
> ***
>
> *We receive additional evidence that you show is new, material, and relates to the period on or before the date of the hearing decision.   You must also show there is a reasonable probability that the additional evidence would change the outcome of the decision.   You must show good cause for why you missed informing us about or submitting it earlier.
>
> Additional Evidence
>
> ***

> You also submitted . . . Records from Horizon Health Services Pine Recovery Center dated November 11, 2022 (9 pages)[.] . . . The Administrative Law Judge decided your case through August 23, 2022. *This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before August 23, 2022.*

Tr. 2 (emphasis added).  Because the Appeals Council found that the evidence from Horizon did not relate to the period at issue, it did not consider whether the evidence met the other requirements for consideration of additional evidence. Tr. 2.

On September 12, 2023, Plaintiff commenced this action, and on December 13, 2023, she filed the subject motion for judgment on the pleadings.  Plaintiff's motion asserts that remand to the Commissioner is required for two reasons.  First, Plaintiff contends that the Appeals Council erred in refusing to consider Brook's report on the ground that it did not pertain to claimant's condition during the relevant period. More specifically, Plaintiff asserts that the Appeals Council erroneously assumed that since Brooks' report was dated after the ALJ's decision, it did not "relate to the period on or before the date of the hearing decision," and that it was error for the Appeals Council to make that determination without first seeking clarification from Brooks.  Second, Plaintiff maintains that the ALJ erred by failing to explain why there was no provision for her mild mental impairments in the RFC finding.  That is, Plaintiff asserts that since the ALJ found that she had mild mental impairments in four areas of mental functioning, he was required to explain why he did not include any limitation on mental functioning in the RFC finding. Plaintiff further argues that such error was not harmless, since her mental impairments arguably limited her to performing unskilled work, which, if such limitation had been

13

included in the RFC finding, would have precluded her form performing her past work as an administrative assistant, and that at step five, she would have been found disabled under the grids.

The Commissioner opposes Plaintiff's motion and has cross-moved for judgment on the pleadings, as discussed more fully below.

After briefing was completed on the motions for judgment on the pleadings, on July 9, 2024, Plaintiff filed a motion (ECF No. 14) indicating that Plaintiff had died, and moving for substitution of Mark J. Moore, Jr., Plaintiff's son and Executor, as Plaintiff in this action. Defendant does not oppose this motion.

The Court has considered the parties' submissions and the relevant portions of administrative record.

## DISCUSSION

<u>Plaintiff's Motion for Substitution is Granted</u>

As a preliminary matter Plaintiff's unopposed motion for substitution is granted. Ther Clerk of the Court is directed to amend the caption to reflect that "Mark J. Moore, Jr., as Executor of the Estate of Cynthia M.," is now the proper plaintiff.

<u>The ALJ's Alleged Failure to Explain Why the RFC Finding</u>
<u>Contained No Limitations for Mental Impairments</u>

Plaintiff maintains that the ALJ erred by failing to explain why there was no provision in the RFC finding for her mild mental impairments.   More specifically, Plaintiff asserts that since the ALJ found she had mild mental impairments in four areas of functioning ("the Paragraph B criteria"), he was required to either include limitations for

those mental impairments in the RFC finding, or to explain why he did not do so. Plaintiff further contends that such error was not harmless, since if the ALJ had limited her to simple, unskilled work in the RFC finding, she would not have been able to perform her past work, which was skilled, and would have been found disabled under the grids.

Defendant disagrees and maintains that the ALJ adequately explained why he did not include limitations for mental impairments in the RFC finding. In particular, Defendant argues that the reasons are evident from the ALJ's discussion at step three of the sequential evaluation.[6] Defendant further contends that "an ALJ is not required to account for mild limitations, such as are present here, with an RFC limitation."[7]

The Court agrees with Defendant that the ALJ did not err in the manner alleged by Plaintiff. First, the Court agrees that Plaintiff is mistaken insofar as she maintains that an RFC finding must contain some limitation to account for mild mental impairments. Indeed, the Chief Judge of this District recently explained why such an argument lacks merit, stating in pertinent part:

---

[6] *See*, Defendant's Memo of Law, ECF No. 9-1 at pp. 13-14 ("[W]hile Plaintiff faults the ALJ for not discussing Plaintiff's mental impairment *again* when assessing the RFC (Pl. Br. 14), the ALJ had already engaged in a lengthy analysis of the evidence related to the mental impairments, which makes his rationale for not including limitations in the RFC clear. The ALJ had already evaluated the functional assessments of Drs. Ransom, Brown, and Haus, all of which indicated that Plaintiff had no significant mental limitations (Tr. 133-27). The ALJ had already evaluated Plaintiff's treatment history and her activities of daily living, which also indicated that she had no limitations which reduced the RFC (Tr. 135-37). Thus, it is clear from the ALJ's decision why he did not include any mental limitations in the RFC finding. *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (affirming where ALJ's rationale could be gleaned from the evidence). The ALJ was not required to repeat this same analysis a second time when determining the RFC because his decision could be read as a whole. *See Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112-13 (2d Cir. 2010) (Court can look to other parts of an ALJ's decision in concluding that individual findings are supported); *see also, e.g., Decker v. Astrue*, 2013 WL 4804197, at *1, *5 (S.D.N.Y. Sept. 9, 2013) (ALJ's decision should be "read as a whole."). Nonetheless, in discussing the RFC, the ALJ again mentioned Plaintiff's activities of daily living and her loss of work due to Covid, again finding that they undermined her allegation of disability (Tr. 138-39).").
[7] Defendant's Memo of Law, ECF No. 9-1 at pp. 12-13 (collecting cases).

Plaintiff does not argue that the ALJ erred in making his [determination that her mental impairments were non-severe], but contends that he was nonetheless required to incorporate mental limitations into the RFC finding based on mild limitations identified at step two. The Court is unpersuaded by this argument.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). "When formulating a claimant's RFC, the ALJ must consider not only her severe impairments, but her non-severe impairments as well." *Novas v. Kijakazi*, No. 22CV1020MKVBCM, 2023 WL 2614362, at *11 (S.D.N.Y. Mar. 8, 2023) (quotation omitted), adopted, 2023 WL 2613550 (S.D.N.Y. Mar. 23, 2023). "This does not mean, however, that the ALJ must include a specific limitation in the RFC corresponding to each of the claimant's non-severe impairments. To the contrary: by definition, an impairment which is not severe does not significantly limit the claimant's physical or mental ability to do basic work activities." *DuBois v. Comm'r of Soc. Sec.*, No. 20-CV-8422 (BCM), 2022 WL 845751, at *5 (S.D.N.Y. Mar. 21, 2022) (quotation and alteration omitted).

As particularly relevant here, "there are no regulations that mild limitations require mental limitations in the RFC." *Jane M. A. v. Comm'r of Soc. Sec.*, No. 19-CV-00808, 2021 WL 63066, at *5 (W.D.N.Y. Jan. 7, 2021). In other words, "while it is true that nonsevere impairments and 'mild' limitations can cause functional restrictions," an ALJ is not compelled to conclude that they do if such a finding is not supported by the record. *Lynette W. v. Comm'r of Soc. Sec.*, No. 19-CV-1168-FPG, 2021 WL 868625, at *4 (W.D.N.Y. Mar. 9, 2021) (emphasis in original).

*Jacquelyn S. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00064 EAW, 2024 WL 338993, at *3–4 (W.D.N.Y. Jan. 30, 2024) (Wolford, C.J.) (citation to record omitted); *see also*, *Kendra C. v. Commissioner*, No. 21-CV-1131MWP, 2024 WL 1242413 at *10 (W.D.N.Y. Mar. 22, 2024) ("Although an ALJ must account for limitations caused by both severe and nonsevere impairments in formulating the RFC, if a mental impairment causes only mild

limitations that do not result in any functional work-related restrictions, the ALJ does not necessarily err by formulating an RFC without mental limitations or restrictions.")); *Andrew P. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00029 EAW, 2024 WL 798159, at *5 (W.D.N.Y. Feb. 27, 2024) (collecting cases holding that an RFC finding need not contain limitations to account for mild mental impairments).

The Court also agrees with Defendant that the ALJ's failure to expressly discuss Plaintiff's mild mental impairments in the RFC discussion does not require remand, since the ALJ's reasons for not including additional limitations in the RFC finding are apparent from the decision as a whole, and, in particular, from his discussion at step three of the sequential evaluation. Tr. 136-137.   Indeed, following the ALJ's discussion of Plaintiff's mental impairments at step three of the sequential evaluation, he stated, "The following residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." Tr. 137.   This identical issue was recently explored in *Donna L. v. Commissioner*, 5:23-CV-0655 (GTS/TWD), 2024 WL 3738067 (N.D.N.Y. Aug. 9, 2024) (Suddaby, J.), and this Court finds that Plaintiff's argument here lacks merit for essentially the same reasons discussed in that decision. *See, e.g., id*. at *3 ("To conclude that remand is required in every case where the ALJ fails to provide some specific discussion in the section analyzing the RFC finding of why he or she chose not to incorporate limitations based on non-severe mental impairments despite the fact that the ALJ has otherwise explained why the evidence does not support any such mental limitations (and where a review of the evidence itself does not reveal evidence that the ALJ ignored or misinterpreted) would be to elevate form over function.   So long as the

Court can glean the ALJ's rationale from his or her decision and such gleaned rationale is supported by substantial evidence, the ALJ's finding should not be disturbed merely because it could have been rendered in a clearer or more explicit manner.").

Plaintiff also has failed to show that the ALJ's RFC finding is unsupported by substantial evidence insofar as it does not include additional limitations related to her mild mental impairments. That is, Plaintiff has not shown that a reasonable factfinder would have to conclude that additional limitations were required in the RFC finding to account for Plaintiff's mild mental impairments. *See, Cheryl F. v. Comm'r of Soc. Sec.*, No. 1:22-CV-00958-CJS, 2024 WL 1285491, at *10–11 (W.D.N.Y. Mar. 26, 2024) ("[T]he ALJ expressly stated, with regard to her RFC finding, that she was required to "consider all of the claimant's impairments, including impairments that are not severe," and that she had "considered all symptoms." Tr. 25, 31. Plaintiff maintains that those statements are disproven by the ALJ's failure to include additional limitations in the RFC finding, but, again, this amounts to a disagreement with how the ALJ weighed the evidence. Plaintiff has not shown that reasonable factfinder would have to conclude that the RFC finding should have included additional limitations related to her anxiety and depression."). Consequently, this aspect of Plaintiff's motion is denied.

<u>The Appeals Council's Alleged Error in Refusing to Consider
Additional Evidence Dated After the ALJ's Decision</u>

Plaintiff next contends that remand is required because the Appeals Council erred in refusing to consider Brooks' functional assessment on the ground that it did not pertain to claimant's condition during the relevant period.   More specifically, Plaintiff asserts that

the Appeals Council erroneously assumed that since Brooks' report was dated after the ALJ's decision, it did not "relate to the period on or before the date of the hearing decision," and that it was error for the Appeals Council to make that determination without first seeking clarification from Brooks.

Defendant disagrees and maintains that it was Plaintiff's burden to show that the evidence related to the period prior to the ALJ's decision, and that Plaintiff failed in that regard since Brooks' report fails to specify the period to which it pertains.   More specifically, Defendant points out that, as mentioned earlier, when Brooks was asked to state, on the functional assessment form provided to her by Plaintiff's attorney, "What is the earliest date that the above description of limitations applies?," she left the answer blank. Tr. 123.   Defendant maintains that since the report was dated after the ALJ's decision, and since the report failed to indicate that it related to Plaintiff's condition prior to the ALJ's decision, the Appeals Council was justified in concluding that the report did not pertain to the relevant period. *See*, Defendant's Memo of Law, ECF No. 9-1 at p. 17 ("Because she dated her opinion November 9, 2022, it was reasonable to infer that the limitations existed at the time of her opinion.   There is no reason to infer, however, that the limitations existed several months earlier.").[8]

The Court agrees with Defendant that Plaintiff's argument on this point lacks merit, since Plaintiff failed to carry her burden of proving that the additional evidence (Brooks'

---

[8] Defendant additionally argues that Plaintiff has not shown good cause for failing to obtain the opinion from Brooks sooner, and has not demonstrated that Brooks' report would have resulted in a different outcome to the hearing.   The Court tends to agree that for the reasons already discussed, Brooks' report would not have resulted in a different outcome by the ALJ, though the Court does not base its decision on that point.

report) related to the period on or before the hearing decision. *See, Eric D. v. Comm'r of Soc. Sec.*, No. 21-CV-6400S, 2023 WL 5090723, at *4 (W.D.N.Y. Aug. 9, 2023) ("Plaintiff bears the burden of showing that evidence was new, material, relates to the period on or before the hearing decision, and has a reasonable probability that it would change the outcome of the ALJ's decision, 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5)."); *see also, Kocol v. Berryhill*, No. 17-CV-01268-LGF, 2019 WL 2428511, at *4 (W.D.N.Y. June 11, 2019) ("Although the Appeals Council may not categorically disregard medical evidence as irrelevant solely because it is generated after the ALJ's decision, *Newbury v. Astrue*, 321 Fed.Appx. 16, 18 (2d Cir. Mar. 26, 2009) (citing Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004)), it need not be considered absent some indication it pertains to the relevant period, for which the onus is on Plaintiff. *See Wilbon v. Colvin*, 2016 WL 5402702, at * 4 (W.D.N.Y. Sept. 28, 2018) (recognizing the plaintiff has the burden of establishing new medical evidence generated after the ALJ's decision is relevant to the period of time in which Plaintiff must establish disability if such relevance is not apparent from the face of the newly submitted evidence). Where, as here, the newly submitted evidence contains opinions that are based on contemporaneous physical examinations, and the Plaintiff fails to establish, as is his burden, that the newly submitted evidence generated after the ALJ's hearing decision relates back to the relevant period, such evidence is irrelevant to Plaintiff's disability benefits claim and the Appeals Council is not required to consider it. *See Mulrain v. Commissioner of Social Security*, 2011 WL 2516068, at * 39-40 (2d Cir. June 24, 2011) (affirming district court's decision denying remand for consideration of new evidence for which Plaintiff failed to meet his burden of establishing such material,

generated after the ALJ's decision, was relevant to the period of time prior to such decision).");  *Tammie S. v. Berryhill*, No. 3:18-CV-174 (CFH), 2019 WL 859263, at *6 (N.D.N.Y. Feb. 22, 2019) ("[A]lthough the Appeals Council may not reject evidence solely because it is dated after the ALJ hearing decision and does not explicitly indicate that it relates to the period at issue, the Court cannot conclude, as plaintiff urges, that the Appeals Council should have found Dr. Rasheed's May 25, 2017, questionnaire to relate to the period at issue. Although the questionnaire is dated just seven weeks after the ALJ hearing decision, it is not clear from the record that it is meant to be retroactive.  . . . Thus, plaintiff has not met her burden of demonstrating that the May 25, 2017, questionnaire relates to the period at issue. Accordingly, the undersigned finds the Appeals Council made no error in declining to consider this record.").

Of course, it is true that Brooks' report indicated that Plaintiff began treatment at Horizon in September 2021, well before the ALJ's decision, which at least provided some basis upon which the Appeals Council could have speculated that Brooks' opinion might relate[9] to the period prior to the ALJ's decision.   However, regardless of when Plaintiff began treating at Horizon, it was Plaintiff's clear burden to show that Moore's opinion related to the period prior to the ALJ's opinion, and the Appeal's Council's finding that Plaintiff failed to make that showing is neither legally erroneous nor unsupported by substantial evidence.[10] *See, Guerrero v. Comm'r of Soc. Sec.*, No. 16CV3290RJSAJP,

---

[9]  The Court says "might relate" since even in Plaintiff's brief filed in this action, she fails to prove, or even to assert affirmatively or definitively, that Brooks' report actually pertains to the relevant period.   Instead, Plaintiff merely attempts to improperly shift the burden onto the Appeals Council to now do what her attorney should have done when she received the assessment form back from Brooks with the relevant information missing, namely, contact Brooks for clarification on that point.

[10]  At best, Plaintiff argues that the Appeals Council should have accepted Brooks' report since the report

2017 WL 4084051, at *6 (S.D.N.Y. Sept. 13, 2017) ("The Appeals Council examined the post-hearing evidence in this case and found that it either did not relate to the time period for which Plaintiff sought disability benefits or duplicated evidence already submitted to the ALJ.   The Court agrees. The MRI record and psychiatrist's statement both post-date the ALJ's decision, and while later medical evidence can provide information about a patient's condition at an earlier date, Plaintiff has not sufficiently *shown* that it does so here.") (emphasis added).   Accordingly, this aspect of Plaintiff's motion is also denied.

## CONCLUSION

Plaintiff's unopposed motion for substitution (ECF No. 14) is granted, and the Clerk of the Court is directed to amend the caption to reflect that "Mark J. Moore, Jr., as Executor of the Estate of Cynthia M.," is now the proper plaintiff.   Additionally, for the reasons discussed above, Plaintiff's motion (ECF No. 7) for judgment on the pleadings is denied, Defendant's cross-motion (ECF No. 9) for the same relief is granted, and this action is dismissed.   The Clerk is directed to enter judgment for Defendant and to close this action.

So Ordered.

Dated: Rochester, New York
      September 25, 2024

ENTER:

*Charles J. Siragusa*

CHARLES J. SIRAGUSA
United States District Judge

---

did not clearly indicate that it was *not* meant to be retrospective, which turns the relevant burden on its head. *See*, Plaintiff's Memo of Law, ECF No. 7-1 at p. 11 ("Brooks noted that Plaintiff had been treating at Horizon Health Services since September 21 2021. T. 119. She gave no indication that the opinion only reflected Plaintiff's limitations on the date the opinion was completed.").   That is, Plaintiff contends that the Appeals Council should have assumed the report related to the relevant period, rather than requiring Plaintiff to prove that it related to the relevant period.